CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
9/24/19
JULIA C. DUDLEY, CLERK
BY: K. Dotson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| DAN HAENDEL, <br>     Plaintiff, <br><br> v. <br><br> VIRGINIA DEPARTMENT OF <br> CORRECTIONS et al., <br>     Defendants. | Civil Action No. 7:18-cv-00289 <br><br> MEMORANDUM OPINION <br><br> By:   Joel C. Hoppe <br>        United States Magistrate Judge |

Plaintiff Dan Haendel is a kosher-observant Jew who was incarcerated at Coffeewood Correctional Center ("CWCC") until September 13, 2018. Am. Compl. 2, ECF No. 31-1. In June 2018, Haendel filed this suit under 42 U.S.C. § 1983, alleging that the Virginia Department of Corrections ("VDOC") and fifteen individual prison officials violated his rights under the First and Fourteenth Amendments to the United States Constitution. *See id.* at 10–19.[1] The remaining individual Defendants[2] filed a motion to partially dismiss the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Procedure, ECF No. 41, which has been fully briefed and argued, ECF Nos. 42, 45, 54. The motion will be granted in part and denied in part.

I. Standard of Review

A Rule 12(b)(6) motion to dismiss challenges whether a complaint sets out a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). To survive under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (quotation marks omitted). A claim is facially plausible "when

---

[1] The case is now before me by the parties' consent under 28 U.S.C. § 636(c). ECF Nos. 47, 48.

[2] The VDOC and two other individuals were dismissed without prejudice in June 2019. *See* ECF No. 45 (citing Fed. R. Civ. P. 4(m)).

1

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense" understanding of the plaintiff's cause of action. *Id.* at 679; *see Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002) ("Dismissal of a complaint for failure to state facts supporting each of the elements of a claim is, of course, proper."). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007) (a court reviewing a Rule 12(b)(6) motion must consider the complaint in its entirety, accept all well-pleaded facts as true, and draw reasonable inferences from those facts in the plaintiff's favor). This "plausibility standard is not akin to a 'probability requirement,'" but it does demand "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

## II. Background[3]

Haendel is an attorney[4] who was serving a five-year prison sentence when he filed this action. He spent three years at CWCC, during which time he allegedly was "subjected to many violations of his Jewish dietary laws and holiday observations" and "several retaliatory and discriminatory acts . . . for his Jewish identity" and for filing a prior § 1983 action against some

---

[3] This section summarizes the Amended Complaint's relevant factual allegations. "While the Court does not repeatedly state 'Plaintiff[] *allege[s]* that Defendant *X* did *Y*,' this summary should not be taken as the Court's endorsement of one version of the facts" relevant to Haendel's claims for relief. *Sines v. Kessler*, 324 F. Supp. 3d 765, 774 (W.D. Va. 2018). The Amended Complaint's well-pleaded facts are presented "as true" in this section because Rule 12(b)(6)'s standard requires the Court to *assume* that they are true, even if "actual proof of those facts is improbable" or the plaintiff's chance of "recovery [seems] very remove and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quotation marks omitted).

[4] Like the prior presiding judge, "I decline to extend the liberal construction standing to an attorney" who is representing himself. Mem. Op. 1 n.1 (Sept. 13, 2018) (Kiser, J.), ECF No. 20.

2

of the same defendants, all in violation of the First Amendment. More specifically, Haendel asserts that Defendants Ivan Gilmore, Douglas Gourdine, Food Services Manager Martin, and Investigator Butler each played a role in "[e]liminating" Jewish New Year and Shavuot services in 2017–2018, failing to offer kosher meals in CWCC's dining hall during Passover 2018, and/or confiscating kosher food that a local synagogue had donated to Haendel for Passover. *See* Am. Compl. 2–3, 7–9, 10–12, 18–19. Haendel also asserts that Defendants Sargent Sacra and Officer Walters charged him with "non-existent" disciplinary infractions because he is Jewish and, separately, to punish him for filing prison grievances and the earlier lawsuit. *See id.* at 6, 12, 14, 19–20. Haendel was found guilty of those charges after a hearing. *See id.* at 3 (citing Compl. Ex. 1, ECF No. 1-1, at 1–22). In February 2018, a CWCC counselor[5] relied on these convictions, which were upheld on appeal, when calculating Haendel's Annual Review "raw score" and "revoke[d] . . . nine days of good time" credit. *Id.* (citing Compl. Ex. 1, at 40–57). Defendant Chief of Housing Walker overruled another official's "recommendation to restore" the credits, *id.* at 11, because Walker knew the Jewish New Year fell on two of the nine days, *id.* at 17–18, and he wanted Haendel to spend another holiday in prison, *id.* at 20. Haendel seeks damages and retrospective injunctive relief. *Id.* at 20–21.

Haendel also challenges the allegedly miscalculated Annual Review score, plus certain aspects of VDOC's inmate grievance procedure, on Fourteenth Amendment due process grounds. *See generally id.* at 1–5, 7, 9–11, 13–14, 17–18, 20. The counselor's initial scoring error—followed by different Defendants either denying or mishandling Haendel's written requests to fix it—meant Haendel was released from VDOC custody nine days later than he had expected. *See id.* Haendel seeks damages, retrospective injunctive relief, and an order striking

---

[5] The person is no longer a defendant to the action. *See* ECF No. 45.

down VDOC's current "5-day appeal timeframe for regular grievances" and "requir[ing] VDOC to provide at least a 15-day timeframe" for all inmates to submit their grievance appeals to the Regional Ombudsman. *Id.* at 20.

Defendants' motion to dismiss primarily challenges Haendel's due-process claims. Defendants Harold Clarke and David Robinson note that they are referenced in the Amended Complaint's caption and list of named defendants, but that Haendel does not allege facts suggesting they were personally involved in any of the underlying misconduct. Defs.' Br. in Supp. 2, 4. Defendants Assistant Warden Hicks and Operations Manager Soutter, both of whom allegedly "responded unfavorably to [Haendel's] grievances and/or disciplinary appeals," chiefly assert that "they are entitled to quasi-judicial immunity" against damages claims arising out of such conduct. *Id.* at 2. The other Defendants argue that the Amended Complaint "fails to state a plausible due process claim against" any of them in their individual capacities because Haendel "alleged—at most—a misapplication of VDOC policy" governing the "appropriate mathematical calculation of [his] Annual Review score." *Id.* at 2–3, 6–7. Finally, Defendants ask the Court to dismiss all official-capacity claims as moot. *Id.* at 7.

III. Analysis

A § 1983 claim has two basic elements: "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The facts needed to state a plausible right to relief under § 1983 will depend on the specific constitutional provision at issue, *Iqbal*, 556 U.S. at 677; *Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Loftus v. Bobzien*, 848 F.3d 278, 285 (4th Cir. 2017), the capacity in which the plaintiff sued the named defendant, *Kentucky v. Graham*, 473 U.S. 159, 165–68 (1985); and,

4

relatedly, the nature of relief sought against that defendant, *Biggs v. Meadows*, 66 F.3d 56, 60–61 (4th Cir. 1995). *See, e.g.*, *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief."); *Lewis v. Bd. of Educ. of Talbot Cty.*, 262 F. Supp. 2d 608, 612 (D. Md. 2003) (explaining that "individuals sued in their official capacity as state agents cannot be held liable for damages or retrospective injunctive relief," but "may be sued for prospective injunctive relief" (citing *Edelman v. Jordan*, 415 U.S. 651 (1974)). With that framework in mind, we turn to Defendants' arguments why parts of Haendel's Amended Complaint fail to state a § 1983 claim for which relief can be granted against them.

A.   *Individual Capacity Claims*

Some of Haendel's claims "seek to impose personal liability upon," and recover money from, Defendants for actions they took under color of state law, *Graham*, 473 U.S. at 165. *See* Am. Compl. 20–21. Because "there is no respondeat superior liability in § 1983 actions," *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004), Haendel must allege facts showing that "each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

  1.   *Personal Involvement*

"[S]upervisory officials may be held [personally] liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). This "liability is not premised upon *respondeat superior*[,] but upon a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Id*. (quotation marks omitted). "[S]upervisory liability can extend to the highest levels of state government" so

long as the plaintiff can "pinpoint[] the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked." *Id.* (quotation marks omitted). On a Rule 12(b)(6) motion, the plaintiff must allege facts plausibly showing:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference" to or tacit authorization of the alleged offensive practices[]"; and (3) that there was an "affirmative link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Turner v. Thomas*, 313 F. Supp. 3d 704, 714–15 (W.D. Va. 2018) (quoting *Shaw*, 13 F.3d at 799), *aff'd* 930 F.3d 640 (4th Cir. 2019).

Haendel alleges that Clarke, VDOC's Director, "is responsible for the standards and services of VDOC as contained in the Department's Operating Procedures," Am. Compl. 10, including the inmate grievance policy, Pl.'s Br. in Opp'n 1, ECF No. 45. Robinson is VDOC's "Chief of Corrections Operations and is responsible for promulgating and implementing corrections polices and services in VDOC." Am. Compl. 10. He also "signed the memorandum dealing with Passover in VDOC for the years [Haendel] was incarcerated." Pl.'s Br. in Opp'n 1. These conclusory allegations are not enough to state a § 1983 claim against either VDOC official in his individual capacity. *Iqbal*, 556 U.S. at 680 (plaintiff's allegation that a high-ranking federal official "was the 'principal architect'" of the challenged policy was "conclusory and not entitled to be assumed true"); *see Mitchell v. Rappahannock Reg'l Jail Auth.*, 703 F. Supp. 2d 549, 557–59 (E.D. Va. 2010). Accordingly, Defendants' motion will be granted in part, and Haendel's claims for damages against Defendants Clarke and Robinson, Am. Compl. 20, will be dismissed.

    2.    *Quasi-judicial Immunity*

Hicks and Soutter assert that they are entitled to quasi-judicial immunity, Defs.' Br. in Supp. 5, which shields government officials "performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of [a] judicial officer," who is absolutely immune from suits for damages. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994); *see Cleavinger v. Saxner*, 474 U.S. 193, 201–06 (1985); *Ostrzenski v. Seigel*, 177 F.3d 245, 249–50 (4th Cir. 1999); *Singletary v. Dep't of Health & Hum Servs.*, 848 F. Supp. 2d 588, 592 (E.D.N.C. 2012). Rather than develop this argument, however, Hicks and Soutter assert that (1) Haendel cannot hold them vicariously liable for their (unidentified) subordinates' misconduct, and (2) they are entitled to qualified immunity because Haendel's well-pled allegations do not show that they personally "engaged in any conduct" that violated his constitutional rights. Defs.' Br. in Supp. 5–6; *see Cleavinger* 474 U.S. at 205–07 (members of prison disciplinary board were entitled to qualified immunity, but not to absolute quasi-judicial immunity). The first point is inapposite. Haendel does not allege that Hicks and Soutter should be held personally liable under § 1983 solely because their subordinates' conduct violated the Constitution. *See Shaw*, 13 F.3d at 798–99. He alleges that Hicks and Soutter personally mishandled his grievances and appeals about his incorrect Annual Review score, which he believes violated his due-process rights. *See* Am. Compl. 3–5, 10–11; Pl.'s Br. in Opp'n 1–2.

That said, a prison official's failure to process, investigate, or satisfactorily respond to a plaintiff's grievances typically does not establish the kind of "personal involvement" needed to hold that official individually liable under § 1983. *See Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005); *Delk v. Moran*, No. 7:16cv554, 2018 WL 1513296, at *5–6 (W.D. Va. 2018). Haendel's assertions that Hicks and Soutter denied his grievance and "lost" his appeal paperwork, Am. Compl. 3–4, without more, also fail to state a claim under § 1983 because

"inmates have no constitutional entitlement or due process interest in access to a grievance procedure," *Booker v. S. Car. Dep't of Corrs.*, 855 F.3d 533, 541 (4th Cir. 2017) (citing *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994)). *See Daye v. Rubenstein*, 417 F. App'x 317, 319 (4th Cir. 2011) (citing *Adams*, 40 F.3d at 75). Accordingly, Defendants' motion will be granted in part and Defendants Hicks and Soutter will be dismissed from the action. *Owens-Ali v. Pennell*, 672 F. Supp. 2d 647, 654–55 (D. Del. 2009).

    *3.      Due Process Clause*

To proceed on his due-process claim, Haendel must "show (1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 146 (4th Cir. 2009) (quotation marks omitted). Defendants are correct that an official's violation or misapplication of an internal prison policy, without more, does not offend any constitutionally protected interest. Defs.' Br. in Supp. 6; *see Jackson v. Sampson*, 536 F. App'x 356, 357 (4th Cir. 2013). But, Haendel also alleges that specific Defendants' intentional breaches of VDOC's policy governing the calculation of good-time credits resulted in him "serving nine additional days" in prison, Am. Compl. 1, which implicates a protected liberty interest, *Wolff v. McDonnell*, 418 U.S. 539, 554 (1974). The Amended Complaint alleged facts showing that a particular "[g]overnment-official defendant, through the official's own individual actions," *Iqbal*, 556 U.S. at 676, deprived Haendel of this interest without constitutionally adequate process. *Wolff*, 418 U.S. at 554–55; *see Covey v. Assessor of Ohio Cty.*, 777 F.3d 186, 197–98 (4th Cir. 2015); *Wilson v. Johnson*, 535 F.3d 262, 267–68 (4th Cir. 2008). Defendants did not challenge that aspect of Haendel's due process claims. *See* Defs.' Br. in Supp. 6. Accordingly, the Court will deny Defendants' motion to dismiss those claims.

8

B.   *Official Capacity Claims*

An official-capacity claim under § 1983 is "another way of pleading an action" against the government entity that employs the official whose alleged misconduct violated the plaintiff's constitutional rights. *Graham*, 473 U.S. at 166. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* To hold the entity liable under § 1983, however, the plaintiff must plausibly allege that the "entity itself [was] a moving force behind the deprivation" insofar as its "policy or custom . . . played a part in the violation of federal law." *Id.* (quotation marks omitted). Additionally, officials sued in their "capacity as state agents cannot be held liable for damages or retrospective injunctive relief. They may . . . be sued for prospective injunctive relief to end violations of federal law and remedy the situation for the future." *Lewis*, 262 F. Supp. 2d at 612 (citing *Edelman*, 415 U.S. at 667–69).

Haendel's requests for a court order "invalidat[ing]" two prison disciplinary convictions and the miscalculated score that kept him in custody for nine extra days, Am. Compl. 20, are barred because the Amended Complaint does not *both* "allege[] an ongoing violation of federal law *and* seek[] relief properly characterized as prospective," *Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 257 (2011) (emphasis added). Instead, Haendel's "requested relief is designed to undo a past harm that cannot [now] be remedied by federal court action." *Staats v. Cobb*, No. CIV-11-417, 2013 WL 1450504, at *2 (W.D. Okla. Apr. 9, 2013) (citing *Opala v. Watt*, 454 F.3d 1154, 1160 (10th Cir. 2006)). Because Haendel is "no longer incarcerated," *id.* at *3, "[t]here is no prospective remedy" that can speed up his release from prison, *Opala*, 454 F.3d at 1160. *See, e.g.*, *Staats*, 2013 WL 1450504, at *2 (dismissing former prisoner's § 1983 claim for declaratory relief against officials whose "alleged improper

9

calculation of his release date resulted in his unlawful incarceration for approximately ten months"). Accordingly, that claim will be dismissed.

Haendel's request that the Court "invalidate VDOC's 5-day appeal time frame" within which all inmates must submit their regular grievance appeals to the Regional Ombudsman, Am. Compl. 20, on the other hand, "alleges an ongoing violation" of the Fourteenth Amendment "and seeks relief properly characterized as prospective," *Stewart*, 563 U.S. at 255. An injunction requiring VDOC to expand the current limitations period "would prospectively abate the alleged violation," *Stewart*, 563 U.S. at 255–56, of Virginia inmates' due-process rights, *see* Am. Compl. 7, 20. The problem, however, is that Haendel has been released from custody and thus does not have to comply with this deadline any more. *See Incumaa v. Ozmint*, 507 F.3d 281, 286–87, 289 (4th Cir. 2009). The Fourth Circuit has long held that the "transfer of an inmate from a unit or location where he is subject to the challenged policy, practice, or condition, to a different unit or location where he is no longer subject" to the alleged harm "moots his claims for injunctive and declaratory relief, even if his claim for money damages survives." *Id.* at 286–87 (collecting cases). Now that Haendel is "free of the policy . . . that provoked his [claim] in the first place," he has "no further need for," or legal right to obtain, a federal court order declaring that the appeal deadline "was unconstitutional as it *applied* (past tense) to him and enjoining its enforcement" from this point forward. *Id.* at 287. To the extent Haendel asserts "VDOC's 5-day appeal timeframe" is facially invalid, *see* Am. Compl. 7 (citing Compl. Ex. 1, at 60), this challenge fails because the Amended Complaint does not allege any facts suggesting the policy "is unconstitutional in all of its applications" or lacks "a plainly legitimate sweep." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (quotation marks omitted); *see, e.g.*, *Klemic v. Dominion Transmission, Inc.*, 138 F. Supp. 3d 673, 698 (W.D. Va. 2015)

(granting motion to dismiss a facial challenge to a regulatory statute, on due process grounds, because it could "hardly be said that [the statute was] unreasonable, arbitrary, or capricious, or that the means selected [were] unrelated to the objective sought to be obtained"). Accordingly, that claim will be dismissed.

## IV. Conclusion

For the foregoing reasons, Defendants' Rule 12(b)(6) motion to partially dismiss the Amended Complaint, ECF No. 41, will be granted in part and denied in part. Defendants Hicks and Soutter shall be dismissed from the action. All claims for declaratory or injunctive relief, as well as Haendel's claims for damages against Defendants Clarke and Robinson, shall also be dismissed. Haendel's claims for damages against Defendants Gilmore, Gourdine, Walker, Long, Martin, Sacra, Feely, Butler, and Walters remain. A separate Order will enter.

ENTER: September 24, 2019

Joel C. Hoppe
U.S. Magistrate Judge